# HOTELERAMA ASSOCIATES, LTD. v BYSTROM, etc., et al.
## Case No. 83-18499 CA 13
Eleventh Judicial Circuit, Dade County
June 22, 1987

### APPEARANCES OF COUNSEL

**Richard L. Lapidus, Lapidus & Frankel, P.A.,** for plaintiff.

**Robert A. Ginsburg,** Dade County Attorney, and **Daniel A. Weiss,** Assistant County Attorney, for defendants.

### OPINION OF THE COURT

JOSEPH M. NADLER, Circuit Judge.

THIS CAUSE came before the Court for nonjury trial. The Court

heard testimony, received documentary evidence and considered the parties' pleadings, closing arguments and memoranda of law. Upon consideration, the Court makes the following findings of fact and conclusions of law.

1. This action was brought by the taxpayer Hotelerama Associates, Ltd. to contest the 1982 tax assessment of two parcels of real property improved by the Fountainbleau-Hilton Hotel complex. The Hotel was purchased by Hotelerama out of bankruptcy for $28,362,239. Prior to the assessment date, an additional $27,500,000 had been spent to improve the property. The property consists of 587,150 square feet of land located at 4391—4441 Collins Avenue on Miami Beach improved with building[s] containing over 1 1/4 million square feet of space, including 1,224 hotel rooms and suites, 40 various commercial and professional establishments, meeting rooms, sales offices and general offices. The taxpayer's suit contested only the assessment of the real property identified by tax roll folio numbers 02-3226-01-2130 and 02-3223-02-0010 (the "subject property"). Public spaces include a main ballroom, exhibition hall, lobby and additional facilities. Seven tennis courts and a lavish swimming pool complement the extensive recreational areas.

2. The Defendant Property Appraiser assessed the subject property at $50,791,337 as of January 1, 1982. The Court hereby finds that this was the just value of the subject property for the tax year in question. The tax assessment was prepared by Frank E. Jacobs, Assistant Property Appraiser, who holds the designations of C.F.E. and A.S.A., and who is a senior member of the American Society of Appraisers.

3. In performing his appraisal of the subject property, the Property Appraiser considered the three standard approaches to property valuation: cost, market and income. In so doing, the Property Appraiser considered and gave adequate weight to all the factors set forth in § 193.011, Florida Statutes (1981).

4. Through testimony, Mr. Jacobs established that he considered market data and gave great weight to the actual income and expense history of the subject property. In his final determination, the Property Appraiser relied primarily upon the income or economic approach. Such reliance accords with standard appraisal practices. In the instant case, both Plaintiff's and Defendants' valuation witnesses relied primarily upon an income approach to valuation.

5. Both the Property Appraiser and the taxpayer's expert appraiser appraised the property by utilizing the income approach to value. In so doing both "considered" the actual income and expenses of the

property. Both used the classic methodology of estimating annual stabilized net income by considering typical income and expenses to be expected. Neither "used" the actual income as the stabilized income estimate. Rather, they forecast expected stabilized net income, just as a prospective purchaser would in determining what price to pay for the property vis-a-vis competitive investment opportunities. Both appraisers then capitalized the forecast of stabilized net income into an estimate of market value by applying a capitalization rate to their income figure. David Bishop, A.S.A., the appraiser called by the taxpayer to testify at trial, however, offered no specific market data or other documentary basis for his capitalization rate.

6. Notwithstanding the taxpayer's contention to the contrary, the Court finds that the Property Appraiser gave adequate weight to the condition of the hotel on the assessment date. The evidence discloses that as of the taxing date, more than $70,000,000 had been invested in the subject property, including more than $13,000,000 in equity capital, $10,000,000 in a mortgage loan by Kentucky Central, and $47,000,000 in mortgage loans by the Equitable Life Assurance Society of the United States. Equitable represents in its annual statement to shareholders that the value of the subject land and buildings is $80,000,00 and has appraisals in its files indicating a range in value between $68,925,000 and $80,000,000. The owners have insured the building improvements alone, exclusive of foundation, swimming pool, and land, for $48,000,000. This sum alone exceeds the taxpayer's $43,000,000 valuation estimate for the entire property.

7. An ambitious renovation program completed prior to the assessment date included expenditures exceeding $27,500,000, including $4,000,000 for a new swimming pool and recreational area and nearly $14,000,000 for replacement or repair of mechanical systems including air, heat, plumbing and ventilation, and overall painting.

8. Although the taxpayer admitted that the value of the property exceeds $42,000,000, it paid taxes on assessed valuation of only $32,000,000.

9. The Supreme Court of Florida has described the standard to be applied by a court before it should overturn a tax assessment as follows:

The fixing of a valuation on property by a tax assessor for the purpose of taxation is an administrative act involving the exercise of administrative discretion, and the Court will not in general control that discretion unless it is illegally or fraudulently exercised or exerted in such manner or under such circumstances as will amount

in law to a fraud. A situation might be presented for judicial interference where a specific assessment is so obviously and flagrantly excessive as to impute clearly to the assessor an intention to discriminate arbitrarily against the taxpayer; or where there appears prejudicial or material error in matter of law, independent of the exercise of discretion as to value. But mere excessive valuation, resulting solely from inadvertence or mistaken judgment, and unaffected by any element of illegality in matter of law, intentional or other abuse of authority, or fraud, express or implied, will not suffice as a ground of equitable jurisdiction. *City of Tampa v. Palmer*, 89 Fla. 514, 105 So. 115

*Powell v. Kelly*, 223 So.2d 305, 307 (Fla. 1969).

10. The Property Appraiser as a constitutional officer is presumed to have acted properly and in good faith, and the assessment comes before the court clothed with a presumption of validity. *Schleman v. Connecticut Life Ins. Co.*, 154 Fla. 96, 104, 9 So.2d 197, 200 (1942); *Bystrom v. Equitable Life Assurance Society of the United States*, 416 So.2d 1133, 1141 (Fla. 3d DCA 1982), *rev. denied*, 429 So.2d 5 (Fla. 1983) (the "Omni" decision); *Calder Race Course, Inc. v. Overstreet*, 363 So.2d 631 (Fla. 3d DCA 1978); *City National Bank of Miami v. Blake*, 257 So.2d 264 (Fla. 3d DCA 1972).

11. The gravamen of an overassessment action is that the taxpayer's property has been assessed "at greater than 100% of its fair market value." *Fredericks v. Blake*, 382 So.2d 368, 370 (Fla. 3d DCA 1980). To sustain its burden of proof in contesting a tax assessment, the taxpayer must present proof that excludes every reasonable hypothesis of a legal assessment. *Bystrom v. Whitman*, 488 So.2d 520 (Fla. 1986); *Blake v. Xerox Corp.*, 447 So.2d 1348 (Fla. 1984); *Homer v. Dadeland Shopping Center, Inc.*, 229 So.2d 834 (Fla. 1970). "The prima facie correctness of an assessment when made by the proper officers must be affirmatively overcome by appropriate and sufficient allegations and proofs excluding every reasonable hypothesis of a legal assessment." *Folsom v. Bank of Greenwood*, 97 Fla. 426, 120 So. 317, 318 (1929). The hypotheses referred to in this definition are generally the three basic methods of property valuation, *i.e.*, (1) the cost approach, (2) the comparable sales or market approach, and (3) the income or economic approach. *Aeronautical Communications Equipment, Inc. v. Metropolitan Dade County*, 219 So.2d 101 (Fla. 3d DCA), *cert. denied*, 225 So.2d 911 (Fla. 1969); *McNayr v. Claughton*, 198 So.2d 366 (Fla. 3d DCA 1967).

12. Section 193.011, Florida Statutes (1981), prescribes eight criteria

**79**

which the property appraiser must "consider" in arriving at fair market value. A property appraiser may assign to each statutory criterion such weight as he deems proper. *Straughn v. Tuck,* 354 So.2d 368 (Fla. 1978). The Court finds and concludes that by considering and giving adequate weight to all eight criteria, the Dade County Property Appraiser complied with the constitutional and statutory mandates of his office in assessing the subject property, including § 193.011(7), the requirement to "take into consideration . . . the income from said property", Plaintiff's contention to the contrary notwithstanding. *Bystrom v. Hotelerama Associates, Ltd.,* 431 So.2d 176, 177 (Fla. 3d DCA), *rev. denied,* 441 So.2d 631 (Fla. 1983).

13. The requirement that the property appraiser "consider" the "income from said property", § 193.011(7), does not mandate that the property appraiser "use" actual income in preparing the assessment. As the Third District recently held:

> If the Property Appraiser must not only *consider,* but also *use* the current use of the property as the highest and best use, there is an inevitable conflict with "fair market value" on all properties on which there is an underimprovement.

*Bystrom v. Valencia Center, Inc.,* 432 So.2d 108, 110 (Fla. 3d DCA 1983), *rev. denied2rf, 444 So.2d 418 (Fla. 1984) (emphasis in original).*

Similarly, in the instant cause, if the property appraiser must not only *consider,* but also *use* the current income and expenses of the property as the stabilized net operating income, there is an inevitable conflict with "fair market value" on all properties which are not generating actual income equal to stabilized income. Ad valorem taxes are property taxes, not income taxes. Section 192.001(1), Florida Statutes (1981).

14. Subject to the guidelines provided pursuant to statute, it is proper for the property appraiser to ascertain and assess the value of property by the exercise of his own judgment. *District School Board v. Askew,* 278 So.2d 272 (Fla. 1973). Recognizing the wide discretion accorded to property appraisers in making tax assessments, the Supreme Court has commented:

> The appraisal of real estate is an art, not a science. There are various methods of approach in determining the market value of real estate, each approach involving the use of various guidelines. Although the use of such guidelines may be mandatory in appraisal work, their application to various situations calls upon the exercise of judgment.

*Powell v. Kelly,* 223 So.2d 305, 309 (Fla. 1969).

15. In preparing the assessment of the subject property, the Property Appraiser adhered to the guidelines provided by law. The taxpayer presented at most differences of opinion as to certain facets of appraisal methodology. Such matters relate primarily to differences in judgment and the case law simply does not support overturning a tax assessment on the basis of differences in judgment. The core issue in a tax assessment suit is the amount of the assessment, *not* the methodology utilized in preparing the assessment. *Bystrom v. Whitman*, 488 So.2d 520 (Fla. 1986).

The gist of the taxpayer's attack on the assessment is that the Property Appraiser failed to make an allowance for capital expenses, *i.e.*, expenditures which do not recur annually. The Property Appraiser directly testified, however, that his assessment provides as much as a 7.6% allowance from gross revenues "for reasonable replacements to maintain the present condition of the property." No evidence or testimony was offered by the taxpayer to demonstrate that this allowance was improper.

At most, the taxpayer offered evidence in support of a difference of opinion as to assessment amount and methodology. Such evidence, however, is insufficient to overturn the Property Appraiser's assessment. The taxpayer, who bore the burden of proof throughout these proceedings, failed to demonstrate either that the Property Appraiser failed substantially to comply with the requirements of law, *Bystrom v. Bal Harbour 101 Condominium Ass'n, Inc.*, 502 So.2d 1312 (Fla. 3d DCA 1987), or that the assessment was outside the range of reasonable appraisals, that is, unsupported by any reasonable hypothesis of legality. *Xerox.* Thus, the taxpayer failed to carry the heavy burden of proof imposed on all taxpayers seeking to displace the Property Appraiser's presumptively correct assessment. *E.g., Bystrom v. Whitman*, 488 So.2d 520 (Fla. 1986).

A showing that one or even several valuation factors may indicate a value lower than the assessment will not suffice to exclude "every reasonable hypothesis of a legal assessment." The taxpayer must demonstrate more than a mere difference of opinion as to the just valuation of the property in question. *Bath Club, Inc. v. Dade County*, 394 So.2d 110, 111-12 (Fla. 1981). "In any assessment, some criteria will indicate a value in excess of the ultimate figure, while some will indicate a figure below the final evaluation." *Keith Investments, Inc. v. James*, 220 So.2d 695, 697 (Fla. 4th DCA 1969). This Court has carefully considered the testimony of the valuation witnesses and concludes that the differences in estimated stabilized net operating

81

income and expenses, capitalization rate and reserves for replacement used by the Property Appraiser and the taxpayer are more differences in professional judgment and do not demonstrate that the Property Appraiser departed from the essential requirements of law which govern preparation of property tax assessments.

16. The comments of the Third District in *Blake v. Oceancoast Corporation*, 417 So.2d 1002 (Fla. 3d DCA), *rev. denied*, 424 So.2d 762 (Fla. 1982), are applicable to the evidence presented at the trial of the case *sub judice*:

> "There is simply no . . . support for [a trial court] finding that the Property Appraiser did not *consider* [emphasis in original] all of the criteria set forth in Section 193.011, Florida Statutes . . ., although, most certainly, the record reflects that the Property Appraiser assigned far greater weight to certain of the criteria than others, as, of course, he was permitted to do without jeopardizing the legality of his assessment. *The Bath Club, Inc. v. Dade County*, 394 So.2d 110 (Fla. 1981); *Straughn v. Tuck*, 354 So.2d 368 (Fla. 1978); *Atlantic International Investment Corp. v. Turner*, 383 So.2d 919 (Fla. 5th DCA 1980); Lanier v. Walt Disney World Co., 316 So.2d 59 (Fla. 4th DCA 1975); *Town of Bay Harbor Island v. Lancelot Associates*, 243 So.2d 437 (Fla. 3d DCA 1971); *Metropolitan Dade County v. Tropical Park, Inc.*, 231 So.2d 343 (Fla. 3d DCA 1970). Because the evidence indisputably showed that the Property Appraiser's assessment was made in substantial compliance with Section 193.011, Florida Statutes . . ., the assessment was entitled to be presumed correct. Since the evidence presented by the taxpayers did not show that there was no reasonable hypothesis to support the Property Appraiser's assessment,"

417 So.2d at 1003, Hotelerama has failed to carry the heavy burden imposed by Florida law upon the taxpayer seeking to overturn a property tax assessment. *Accord Muss v. Blake*, 416 So.2d 2, 3 (Fla. 3d DCA), *rev., denied*, 424 So.2d 762 (Fla. 1982).

17. Regardless whether the Property Appraiser's or the taxpayer's valuation "method [is] theoretically superior, the trial court [is] bound to uphold the appraiser's determination if it was lawfully arrived at and within the range of reasonable appraisals, that is, if it was supported by any reasonable hypothesis of legality." *Blake v. Xerox Corporation*, 447 So.2d 1348, 1350 (Fla. 1984). The Plaintiff-taxpayer herein failed to prove that the assessment by the Property Appraiser was inconsistent with any reasonable hypothesis of legal assessment.

18. Moreover, even if the taxpayer had proven its allegations that the subject assessment is "outrageous" and exceeds fair market value, Hotelerama's failure to pay prior to trial all taxes it admitted were legally assessed precludes granting the relief requested by the taxpayer. Article VII, § 13, Florida Constitution.

In June 1982, judgment was entered in favor of Hotelerama, adopting the taxpayer's own $37,500,000 estimate of the value of the subject property as of January 1, 1980. Notwithstanding this admission of value, Hotelerama paid taxes in December 1982 with respect to the assessment in the case *sub judice* based on only a $32,000,000 valuation.

The Court specifically finds that the taxpayer's payment on a valuation of $32,000,000 is grossly disproportionate to the $42,000,000-plus valuation admitted by the taxpayer and that the taxpayer's admission was not made in good faith. *See* § 194.192(2), Florida Statutes (1983).

Accordingly, it is

ORDERED AND ADJUDGED that:

1. The 1982 assessment of the subject property described in paragraph 1 of this judgment is hereby confirmed and ratified in all respects. The Tax Collector shall forthwith issue a tax bill for deficiencies based on the assessed value of $50,791,337 together with interest at the rate of 12% and a penalty at the rate of 10% per annum from April 1, 1983 until the date of this judgment. If unpaid after thirty (30) days from the date of this judgment, the taxes shall, without further order of court, be delinquent and subject to collection and enforcement as provided by law.

2. Defendants Frank Bystrom, as Property Appraiser of Dade County, Florida; B. W. Williams, as Tax Collector of Dade County, Florida; and Randy Miller, as Director of the Department of Revenue of the State of Florida, do hereby have judgment in their favor and against the Plaintiff and shall go hence without day.

3. The Court reserves jurisdiction to tax costs upon motion.

DONE AND ORDERED in Chambers at Miami, Dade County, Florida, this 22nd day of June, 1987.